## CHARLESTON.

BERNARD GLOEKLER CO. *v.* CARR.

Submitted March 19, 1912.    Decided September 30, 1913.

An offer and acceptance for the sale of drug store fixtures were in the following form:

"We propose to furnish and erect complete in your store at Charleston, W. Va., the following fixtures: 25 foot wall case (McLean style); 18 foot tincture shelving; 11 foot patent medicine case; 6 foot tobacco case and humidor; 6 foot mirror; 12 foot R X work counter; 12 foot R X partition   18 foot 6 inch settee, upholstered in green leather; 7 foot 6 inch mirror, above settee; 14 foot 6 inch 'L' case; three 6 foot — cases; 5 foot wrapping counter, glass front and sliding door; 10 foot laboratory table.

Exposed parts of above in solid and veneered mahogany; all glass bevel plate, and all mirrors No. 1 grade same, metal back; all cases to be all plate—plate shelves 10″ marble base; finish—best quality, hand-polished and rubbed.   Complete plans, specifications and details to be submitted and approved by purchaser. Price $2145".   BERNARD GLOECKLER Co., Per Leon Shipman. Accepted: Jas. A. Carr, Carr's Drug Store".

HELD, *in view of the evidence:*

1.   SALES—*Contract—Proposal and Acceptance—Binding Effect.*

That the contract was mutually binding on both parties, and Carr could not revoke it.    (p. 721).

2.   SAME—*Contract—Breach—What Constitutes.*

That his refusal to take the fixtures in conformity with the contract was a breach thereof.    (p. 721).

3.   SAME—*Contract—Validity.*

That the contract was not invalid and unenforceable because of the concluding clause thereof.    (p. 721).

4.   SAME—*Contract—Description—Sufficiency.*

That the contract is sufficiently definite in the description of the fixtures.    (p. 724).

Error to Circuit Court, Kanawha County.

Action by the Bernard Gloekler Company against James A. Carr, trading, etc.    Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Goettman & Belcher* and *Coto & Bledsoe,* for plaintiff in error.

*Price, Smith, Spilman & Clay,* for defendant in error.

LYNCH, JUDGE:

By an action of assumpsit brought in the intermediate court of Kanawha county, plaintiff seeks to recover damages for the breach of a contract between it and the defendant. The jury first empanelled found for defendant. On writ of error, the circuit court set the verdict aside and remanded the case. On the second trial the jury, at the direction of the court, found for plaintiff the sum of $469.22, that being the amount claimed by the plaintiff in its bill of particulars and affidavit filed with the declaration. The intermediate court rendered judgment on the verdict, which, on writ of error, the circuit court affirmed.

The contract, the breach of which is averred, is, in substance,. that plaintiff proposed in writing to furnish and erect complete in defendants store certain fixtures, designating each item by name or number or otherwise, and adding: "Exposed parts. of above in solid and veneered mahogany; all glass bevel plate,. and all mirrors No. 1 grade same, metal back; all cases to be all plate—plate shelves 10″ marble base; finish—best quality, hand-polished and rubbed. Complete plans, specifications, and details to be submitted and approved by purchaser. Price $2,145." Signed: "Bernard Gloekler Co., per Leon Shipman.. Accepted—Jas. A. Carr, Carr's Drug Store."

On writ of error here, the defendant raises two questions, and none other: "First: Was the contract sued on intended to be in truth a contract, or merely a preliminary agreement or order revocable by either party until the fulfillment of certain conditions? Second: If intended by the parties to be a binding agreement, is it sufficiently certain to afford any basis of enforcing it?" Both of which are in fact questions to be determined by the court.

The argument in support of the first proposition is that, until complete plans, specifications and details were submitted by plaintiff and approved by defendant, the contract was incomplete—not binding on, and therefore revocable by, either of them. We do not agree to that conclusion. Nor does *Plumbing Co.* v.

*Carr,* 54 W. Va. 272, or *Barrett* v. *Coal Co.,* 51 W. Va. 416, cited support it. Neither case asserts any such proposition. They hold that, where work is to be done or materials furnished to the satisfaction of the owner, the latter may withhold final payment if the work and materials are not satisfactory to him, provided his "rejection is in good faith and not fraudulent." If fraudulent and not in good faith, his rejection will not avail to defeat payment. In this case, Carr did not afford plaintiff an opportunity to prepare and submit plans and specifications for his approval. Within an hour after accepting the order, he arbitrarily sought to revoke it, assigning as the only reason that he had purchased the same fixtures from another company at a materially reduced price. Our opinion is that plaintiff's offer and defendant's acceptance have all the necessary elements of a contract binding on both, notwithstanding the final clause providing for the approval of plans and specifications. These were not made a condition of the offer and acceptance, either in express terms or by implication. Carr, neither in his letter addressed to plaintiff the day after his acceptance of the order, nor in his testimony, sought to rely on the final clause as an element of the contract of purchase. In the letter, the difference in cost is urged as his reason for the recall of the agreement.

In his testimony, he frankly repeats and emphasizes the same reason. From his testimony, it is also apparent that he did not attach any importance to the plans and specifications as an element of the contract. On the contrary, it is clear that he deemed them only a detail of the final completion of the work, the performance of which plaintiff assumed by the agreement— a conclusion in accord with reason and in harmony with a fair interpretation of the agreement. He testifies that "Mr. Shipman said that the plans and specifications would come in water colors and show the store as it would appear as you would walk in from the front, set in position; that is the idea I wanted of the store, to know how it would look." It was "to suit my taste in the matter." The natural and only reasonable inference from this statement is that the plans and specifications related only to the manner of doing the work: that is, when completed the fixtures should cause the store to appear attractive to his patrons, and hence be helpful in his business, an advertisement.

Even after receiving the plans and specifications prepared and forwarded by plaintiff to defendant, he admits he had no objection to them, although he at once returned them to plaintiff.

Our interpretation is sustained, to some extent, by *Sellers* v. *Greer*, 172 Ill. 549, 40 L. R. A. 589; *Alderton* v. *Williams*, 139 Mich. 297; *Moran Manufacturing Co.* v. *St. Louis Car Co.* (Miss.), 109 S. W. 47; *Hinckley* v. *Pittsburgh Steel Co.*, 121 U. S. 265. In the Sellers case, the proposal was that Greer was to take all the Greer patents and all special machinery attached to punching machines and all other appliances belonging to the making of spikes, surrender his stock in M. S. & Co. and to furnish it complete sets of templets for splices, the company to loan machine No. 4 for six months and pay Greer $1,800 towards a new machine for cutting spikes, Greer to fill all the present orders so far as the material on hand would complete them; "This agreement to be put in proper form at as early a date as possible, pending the return of the company's attorney to draw up the necessary releases, etc." The court said: "There is nothing appearing on the face of the contract, nor is there anything in the evidence introduced on the hearing, to sustain the position that the proposal was not intended to be a complete and binding contract. The contract is definite and specific in regard to what was to be done by each of the parties." The Alderton case holds that "a contract by which it is agreed to change a heading mill into a stave mill and carry on the business of manufacturing staves is not void for indefiniteness in that it fails to specify the kind of machinery to be bought or the kind of staves to be manufactured." Here, the fixtures sold are specified in detail. More directly in point is the Moran case. The order proposed by defendant and accepted by plaintiff was: "Enter our order for 1,000 net tons of bar iron at $1.70 per 100 lbs. f. o. b. our works, half card extra; no charge for cutting to length 5 feet or over; specifications to be furnished during balance of year." The car company declined to furnish the specifications, inferentially because the price of iron materially decreased before the expiration of the year. The court held that "the contract, in view of the evidence, was mutually binding on both

parties, specifically stating the quantity, kind and price of the goods sold, and the refusal of the buyer to specify and accept the goods in conformity with the contract was a breach thereof."

In *Hinckley* v. *Steel Co.*, the court states the essence of the contract in the syllabus, to the effect that the defendant agreed in writing to purchase from the plaintiff rails to be rolled by the latter "and to be drilled as may be directed," and to pay for them $58 per ton. He refused to give directions for drilling, and, at his request, plaintiff delayed rolling any of the rails until after the time prescribed for their delivery, and then defendant advised the plaintiff that he should decline to take rails under the contract. The court held the defendant liable in damages for the breach of the contract. In this case, it is also noted that defendant's excuse for not taking the rails under the contract was that he had arranged to purchase them at a lower price elsewhere. Likewise in *Womble* v. *Hickson,* 91 Ark. 266, the plaintiff in error agreed for a fixed price to construct a house out of material to be furnished by Womble, the contract providing that "a drawing and specifications of said house are to be attached and become a part of the contract. The court held that "this was not a condition of the contract," and sustained a judgment for plaintiff.

The argument on the second proposition is that the description of the fixtures is not sufficiently definite for the enforcement of the contract, or to warrant recovery for its breach. This conclusion also fails to meet our approval. The contract definitely states what each was bound to do: the plaintiff to furnish certain fixtures fully specified and described, and the defendant to pay for them at a fixed price when set up and complete in his store. But it is said plaintiff subsequently specified each article with further detailed description. This it did, in the plans and specifications submitted; but its act in this respect only made more definite that which before was already sufficiently certain to create a binding contract. Its motive, no doubt, was a desire to completely satisfy defendant, and not because of any obligation resting upon it. Our conclusion upon this feature of

the contract, its definiteness of description of the fixtures sold, accords with the views announced in the cases cited upon the first question propounded by defendant.

We therefore affirm the judgment.

*Affirmed.*